May it please the court, I am Lisa Rossano and I am here with my clients, Relators for the United States, who are classic whistleblowers within the spirit and purpose of the False Claims Act. They discovered and voluntarily reported massive fraud by Honeywell. Honeywell rigged the numbers and fooled the government into giving them an energy services contract on the basis that millions of dollars would be saved. It was a lie. Honeywell knew it was a lie. The energy services contract would never save money. Honeywell has admitted on tape that the contract would never save money for the government. Honeywell fraudulently and intentionally victimized the government and obtained tens of millions of dollars under this contract and inflicted hundreds of millions of dollars of damages on the Army, the government, and the taxpayer. What was publicly known about what you just described before your clients reported the matter? Nothing. The GAO report is the only document that was publicly released. The Army Audit Agency did have a report, but that was never released. And the GAO report merely identified that there had been problems associated with energy services contracts. Naturally it's difficult to figure out the baselines and the cost of energy for contracts that last between 10 and 20 years. Publicly released is not the statutory language, is it? The language is that it's public disclosure. Public disclosure. Help me if you would. The AAA audit report details what your clients told? The AAA audit report discusses Honeywell and discusses the baseline. Now, the AAA report was prepared by auditors for the Department of the Army? It was prepared by a contractor for the United States government, EMP2. And it was transmitted to some government agency? It was released within the government. It was presented to some government officials? Within the United States. Now, was it available to a member of the public upon request of that agency? Could you get it under FOIA or some other means? If it was, it never was. No, no, I didn't ask that. I'm not asking whether members of the public were diligent enough to unearth the truth. The question is was it available to the public? And if it's available to the public, does it become publicly disclosed? That's the issue. Certainly. First of all, the AAA report, if it was possible for it to be released pursuant to a FOIA request, was not released pursuant to any request to the public. It was not produced? No. Nayir Mahmoud, who is an internal review officer, prepared a declaration. And to his knowledge, the AAA report was never released to anyone outside of the government, Honeywell, or the auditor that was contracted by the government. What makes you think that Mr. Mahmoud knows about everybody who could possibly have seen the report? His declaration is unrefuted. And Honeywell's briefing only indicates that it was available upon request. So if it had ever been disclosed to anyone in the public, Honeywell would certainly have identified that in their briefing, rather than just simply saying it was available. Your position is that the law is that a document which is publicly available for inspection is not disclosed until a member of the public, and that is not a government official, but a member of the public has ocularly inspected. The law in this circuit, under Schumer, is exactly that. Schumer versus Hughes. That's something that is only theoretically available. I don't understand what theoretically available means. It's either available or not available. Documents exist in government files all the time. They're buried in files. That doesn't mean that the documents are publicly out there. It takes affirmative act. They're not theoretically available. They are available. But they haven't been inspected. Ah, but theoretically means that there is some theory but not in actuality which makes them available. You're using theoretically to mean it has not been ocularly inspected. It has not been, other than the government Now, what about this? What about a person who's employed by the government, right? Who sees the report and whose duties in the government have nothing to do with the facts of the report and is not an auditor. He just happens to be a person in government who sees it. And then he's motivated by some public interest. Totally apart from his government duty. And he talks to say, a journalist. Has that person been a member of the public? No. No, this government has rejected Doe. In that case, government employees investigated So government employees are categorically excluded from being regardless of their motivation, regardless of what they do they're categorically excluded from being members of the public? Those are the facts in Doe that this court rejected. We have to first acknowledge there's a circuit split on what publicly available means. And the Ninth Circuit has taken the position that you articulated And the fact is here, you know, just because something would be potentially, or as you say, theoretically available until a request has been made under FOIA, we don't know if there would be for example, any exemption that would make it non-disclosable. So I think that's why this, as I understand it and maybe you can correct me why the Ninth Circuit has taken the position that until there is a disclosure, one can't know that it's been publicly disclosed. Is that correct? Until there is a disclosure, until it's out there, one cannot know if it has been And there is, Mr. Mahmoud is in a position to know that it has not been disclosed outside of the government EMP2, the auditing contractor, and the defendant. Even if we were to skip over the public disclosure aspect of the False Claims Act, your clients would still have the option for there to be jurisdiction if they were the original source, correct? Yes, and they are original sources. It would be helpful for me to have you articulate why you think they're original sources because we have the District Court finding that there's no quote specific allegations that show they were the direct source. So it would be helpful if you could point us to why you think that is an error. Certainly. The District Court's conclusions were conclusory. It actually just briefly touched on the last paragraphs perhaps of the Relators' Declarations where they said in conclusion, I understood this but Relators prepared extensive declarations that are in the excerpts of record which show how they learned about Honeywell's fraud and how they reported it up the chain of command and to anyone in a position to know and help. These Relators are sophisticated engineers who were able to determine from Honeywell's proposed documents and from the contract and from the M&V verifications that Honeywell was lying, that it was ripping the government off millions of dollars. Ryan Linehan, for example, is an expert. Tim Berg, Stan Smith, they were all on the ground checking buildings, going into buildings, touching equipment, doing calculations, reviewing Honeywell documents. They actually walked into meetings and recorded conversations. We have the tapes. Honeywell lied and admitted it was bold enough to admit that the contract was actually economically irrational. That it never made sense to enter into that contract. These gentlemen did their part to unearth this fraud and voluntarily reported up the chain of command and Ryan Linehan was actually the one who called the GAO fraud hotline and started all of this. He's the one who gave all of his calculations to AAA. He was at all of these meetings. So was Stan Smith and the other Relators all participated heavily. Tim Berg came on board after AAA but he was involved extensively and he's actually his information concerning Honeywell violating the Anti-Deficiency Act. His information was forwarded along to the agencies investigating this. So these Relators are on the ground, engineers who figured it out. Honeywell was stealing from the government. These weren't mistakes. This was intentional fraud. They have direct and independent knowledge and the trial court was wrong. It was completely wrong. I'm looking at their declarations and you had mentioned Mr. Linehan. Yes. Is he the one that is the most specific about how this came about? He is. He came to understand this project in February of 2002 and recommended almost right away that the AAA and GAO be called in. He personally contacted the GAO in 2002 and he actually prepared a life cycle cost analysis which verified that the government would lose money. Honeywell didn't even prepare that in connection with this contract which is itself in violation of an executive order. So Honeywell doesn't have a life cycle cost analysis because it knows there's no savings possible. Linehan prepares it, figures it out right away and reports to anyone he can find. And then he gets together with his colleagues and they help him along and they are all Relators who are on the ground inspecting this project, looking at these buildings and finding out that Honeywell rigged the data. Tim Berg's declaration is particularly interesting. He lists 38 points, 38 items that he discovered that were not in AAA, were not in GAO concerning the specifics of Honeywell's fraud. And that fraud includes Honeywell omitting 11 buildings from the baseline and then including them in order to inflate the savings. And Honeywell dividing the project into two phases so that the government would have no idea that it was going to be a money loser. And then Honeywell rigged the Department of Energy software so these figures were all wrong from the beginning of this project. There was no way that Honeywell was going to not make money on this project, which is exactly the problem. It's not the point of the Energy Services Act and the Relators desperately sought help from anyone in a position to help them. And they are still trying to seek justice for the United States government. I understand that. That's the purpose of the False Claims Act, but we're trying to sort through the legal requirements. You have eight minutes and I believe you want to reserve your remaining time. Thank you. Good morning, Your Honors. My name is Dr. Li. I work for the U.S. Minneapolis office and I am here on behalf of Apolli Defendant's Honeywell. Let me ask you a question. Yes. It follows on the last conversation. Is it your position that the AAA report preceded the acts of the Relators in denouncing Honeywell? It's our position that the AAA reports publicly disclosed. I'm sorry. I'm talking about the original source. The original source, chicken and egg. Yes. Which came first? The AAA report or the Relators' whistleblowing? Okay, taking apart that question, pieces of what are in Mr. Linehan's declaration occurred before the publication of the AAA reports. And the actual public disclosure within the AAA reports rely on Mr. Linehan's statements? No. Did Mr. Linehan's statements approximately cause the AAA report to investigate? I think where the jurisprudence is confusing and where we're getting hung up here, Your Honor, is that what needs to be publicly disclosed with the original source question and the public disclosure question related as they are. They have to show that they are an original source of the allegations and transactions alleged in the complaint. Yes. Okay. Will you get back to my question? I'm sorry. Yes, Your Honor. I'm interested in the temporal relationship between the facts in the AAA report and the acts which the Relators' relate in their declarations. Which came first? The facts in the AAA reports related to inflated baselines, inflation of baselines and post-conversion costs, some of those are included in some of the statements in Mr. Linehan's declaration, which would, yes, some, not all, and it's different conclusions. Mr. Linehan's declaration is that he came up with this information and gave it to the AAA auditors. True? In part, yes. All right. Now, is the finding by the district court judge that the opposite happened? Because if you take a look at page 12, the district court judge says, well, whatever they say was all in the AAA report. Was that a finding of fact or a finding of law, and how do we review that finding? I believe, Your Honor, that is a factual finding underpinning his conclusion for clear error. And what is the standard for clear error? I'm sorry. It doesn't have to be implausible, illogical, or without inferences which can be taken from the record. Isn't that what clear error means, Under Henson? I think you want to say yes. Yes, Your Honor. You want to say yes. All right. Now, is it your position that the trial judge was correct at least under the clear error standard, or there's sufficient evidence for the judge to be correct, because there was some evidence that what was in the AAA report preceded what the relators blew the whistle on? Yes. Yes, Your Honor, and in fact... Could you tell me what those facts were? And if you look at the amended complaint, Your Honor, at I believe it's 989. Is that the record, 989? Yes, or actually, let me get you to the right site. I'll find it in a second. But the amended complaint, the relators themselves allege that there was already a contract modification to Task Order 8 as of October 2002. That means Huntsville and the Army Corps of Engineers had already sat down with Honeywell and renegotiated, at least in part, part of Task Order 8 by October 2002. And that is 987 is the correct site for that, Your Honor. And it's something that they are alleging themselves had already happened. So apart from Mr. Linehan and anyone on the Directorate of Public Works in Fort Richardson, Alaska, the Army Corps of Engineers in Huntsville, Alabama, who actually issued these task orders and had the contract with Honeywell, had already determined that there was a shortfall sufficient to modify the contract. So there's a problem. The contract is not going to make the energy savings that was anticipated at the beginning. A modification already occurred in 2002 that's pleaded in their amended complaint. Right, but that doesn't say that there might not have been a false claim previously. Your Honor, yes, that's correct. But if you look at Mr. Linehan's declaration in terms of the timing of when he is providing information to the AAA and when he's talking to Huntsville, the timing doesn't add up. It's completely plausible and it would not be clear error for the district court to determine on the record that it had that Huntsville could have reached a separate and independent conclusion that these contracts were deficient under the statute, meaning there would have been an energy shortfall before Mr. Linehan or anyone at Fort Richardson would have tipped them off to the alleged fraud. The difficulty with this case is two-fold. One is that the district court kind of goes like this without really any findings. So you're now trying to basically backfill, admittedly, because you're looking for what could be plausibly. But we don't have any finding by the district court to overturn that's very specific, do we? If you can point me to that, then that would be more helpful. But that's one problem. The other problem is that we're kind of skipping over what's the legal construct of the whole case. Because public disclosure has a different meaning here than it might in our own head about what public disclosure is. An original source has a very specific meaning under the False Claims Act. I'd like to kind of separate the two. And let me start with the first one, which is where you are now, and that is with respect to the district court, where are findings, where are there any findings that we can look to that really relate to what you're talking about? Because we're kind of mixing and matching. I assume that you're talking now about the original source issue. Correct. I believe that's what those questions were geared towards, yes. So on the original source issue, the findings start at excerpts of record 12 and go through 15 in the district court's opinion. And it starts on page 13. I've got the five declarations. I have the 50-plus documents they put in. And here are some conclusions about what I find. And that starts on page 13. It talks about what the AAA findings were. It talks about how the amended complaint, the relators failed to allege what their direct and first-hand knowledge was as an original source. Let's take it right there. They are very, very specific in their declarations about what job they had, what meetings they went to, the people they spoke with. I don't know if it's true or not, but that's the declaration. Is there anything that rebuts their declaration? And I would say they're specific about the wrong things under the FCA and to qualify as an original source. It's not that we have to rebut it. It's that what they're telling the court in their filing isn't sufficient to qualify as an original source. They had meetings. Mr. Linehan says he ran some back-of-the-envelope calculations. But what they need to be an original source of is the question. They need to be an original source of the alleged transactions underpinning the fraud. So they need to have direct and personal knowledge of the falsity. Why was it false? How was it wrong? And it has to be direct and independent of anything else that is already in the government's possession. So, for example, for Mr. Berg or Mr. Linehan to say, I am an engineer and I have specific knowledge because I can look at these software outputs and I can look at these numbers and I can talk to people and the numbers don't add up because I'm an engineer. Well, in Springfield Terminal versus Quinn, that's 14F3rd at 655, alleging the fact that I can look at this, I'm an engineer and I can put this together is not sufficient to qualify as an original source under the False Claims Act. And... Well, what you need to have is direct knowledge, first-hand knowledge that you obtained through your own labor, unmediated by anything else. In other words, you can't be somebody dispatched to investigate the problem. So, did they figure out for themselves at least as they allege that there was fraud and through their own labor or analysis figure that out? And I would say, Your Honor, there are many places in the record that would indicate that that is not the case. That what they were actually relying on was the knowledge of others and that they were passing it on to different investigative agencies. Well, why isn't that? That's exactly what you do when you're a whistleblower. The problem is you can't just wave your hand and say, well, they didn't have first-hand knowledge. You've got to go through what they said and then match it up with the complaint, which the district court didn't take time to do, really. So, if you could point me to specific things that would be helpful, and then answer a second question, and that is it may be that some of the allegations are not original source, but others might be, and where would that leave you? Okay. Yes, Your Honor. Thank you. Let's take each relator in turn. All right. Okay. And I'm going to skip Relator Mahmoud for a minute and send him off to the side because of the duty issue that I think precludes him completely from being able to voluntarily disclose. Tom Berg, in his declaration, if you look at it, what he claims is discovery of the alleged fraud based on concerns raised by Colonel Snodgrass and work done by Ryan Linehan that he then reports up the chain of command. It's not, I sat down and looked at this and figured out by myself what the problems were. So he's relying on the work done by others and under this Court's precedent in Meyer and in Biddle and I also believe in Hughes, the Schumer case, it's not enough to rely on work done by others and to pass it along. It's insufficient to be an original source. And if you look at the excerpts of the record 733 through 34 and 738, you'll see that. So Tom Berg, we submit respectfully, is merely a conduit of information. And you can't just be a conduit to be an original source. Stan Smith. Suppose he heard a Honeywell person recognize that they were committing fraud. A Honeywell person certainly wouldn't say that to the government. But he reports it to the government. Is that relying on somebody else? No, Your Honor, and I want to get to that 2006 allegation in a minute, but I think under the facts as the way you have characterized it, that would be sufficient to qualify as an original source. At least potentially. And then Stan Smith says he reviewed some contracts and talked to unidentified people and confirmed the suspicions of unidentified staff that it was fraud. And it's completely conclusory. There's nothing in there that explains how it is Stan Smith came to the knowledge that what Honeywell was doing was knowingly and intentionally false. And you can look to the excerpts of the record 351 of Mr. Smith's declaration. Mr. Berg's, Tim Berg's involvement postdates all of the public disclosures we're talking about. So to get back to Your Honor's question about how this all sets up in the legal framework, we already have a public disclosure, according to my client's position, in the AAA reports and the GAO report. Tim Berg's involvement postdates the AAA audit reports. It's not until November 2004 he admits that at Excerpt of the Record 316. And he admits that at that point Let's just stop there and kind of sort out the issue on original source. Is there any evidence that the AAA audit report had ever been released to the public? In the sense, was it published in a newspaper or online? No. Was it ever requested through FOIA? Do we have any evidence of that? No, and that's not the test. And what, to go back to the Schumer-Hughes airline case, Your Honor, what this court said in Schumer was that if a document were only theoretically public and subject only to a FOIA request, that would not be sufficient public disclosure because, and this was key, because you could not tell until the document was requested whether or not it would actually qualify for a FOIA disclosure. So there might be something preventing it from being disclosed. Here, what we have is we have one disclosure to EMP2 a year after the report is done. So it's disclosure to a third party. But it's a third party government working for the government, correct? It was an auditor retained by the government. So that is not persuasive. Tell me why it's public. We have citation to it in the Department of Defense Inspector General's report page 39 of Appendix A. It lists it out and calls it by name. It says, lessons learned from an energy-saving performance contract at Fort Richardson, and at the top of Appendix A of that 2004 semiannual report to Congress, it says you can get any of these reports by any of these investigatory bodies of the Department of Defense by asking for them. So your condition is that publicly disclosed means publicly available and announced as such. Correct. It's announced to the public as such. Correct. No restrictions. That's right, Your Honors. Back to Mr. Tim Berg. So he does not come onto the scene until November 2004. That's at Excerpt of the Record 316. It admits that at that point Ryan Linehan had already provided information to GAO and a number of other people. So it's not Tim Berg's information. Again, it's somebody else's information. And it's somebody else twice removed from Honeywell. And one thing I'd like to point out for the Court is that this is not your classic whistleblower situation. Your classic whistleblower situation under the False Claims Act is that an employee of Honeywell comes forward and says, here's what I know and here's why it's false. And it's very easy to see the direct and independent knowledge in that classic situation. It gets much more difficult to find it when we're talking about a federal government employee who's allegedly getting this information either from Honeywell or from some other source. So that leaves Mr. Linehan. And if you look at Mr. Linehan's declaration, what he says about the information and what he was doing for the AAA is that he was a data gatherer. And what he was doing was passing along all of the information that's already within the government's possession. Packaging that up and sending it to the AAA auditors as they're conducting their audit. Take, for example, excerpt of the record 371. He fails to allege specific facts explaining what information or facts he gave to the AAA that was direct and independent, unmediated by anything else, which is the standard in Meyer. And this is where I come back to what they already allege in their complaint. Nor can he, because that information is already in the possession of the government, and the government has been investigating it, and they've already reformed the contract at least once by October 2002. This case is much more like the Harshman case, the circuit, than any other precedent cited by the AAA. Well, before that happened, he says, I sent an e-mail, I said my concern about the contract didn't exist, that they ignored future costs, et cetera. They responded and concurred. They requested a meeting. Why doesn't that make him original source on that? And this is way before the contract reformation. And to that point, in terms of when Huntsville actually received the information and started reforming the contract, I don't know, and it's not in the record. But he's saying, look, this came to my attention. I was skeptical about project savings, so I took a look at this, and then I found out there was a problem. And I gave a detailed list of my concerns, along with recommendations that you should call in the AAA. I'm a little hard-pressed to see why those specific allegations in 2002 wouldn't qualify him as an original source. And it's possible, I would submit to the court, it's possible that for some of those, he could qualify as an original source on the direct and independent knowledge prong, but he would fail again on the duty prong. And the reason he fails on the duty prong is this court's precedent in Biddle, and I just want to get this in before my time runs out. The duty of a federal employee to report fraud is not solely limited to what your official job title or responsibility is. The court in Biddle noted that you look first at the description, then at the regs, as well as the oral statements of his supervisors. And here, if you look at what the responsibilities were of each and every one of these relators based on the chain of command and what they were tasked to do, first under the statute for the Energy Savings Reportment Contract, and then under the actual statements of their supervisors, they were required to report what deficiencies were and what any findings they had may have been with respect to this ESPC. For example, the Linehan Declaration, I would draw the court's attention to excerpts of record 363, 367 and 68, 370 and 371, where he was ordered by his supervisor to evaluate the Honeywell numbers. He was ordered by the joint task force, various legal offices, and reported it up the chain of command. There were five different government investigatory agencies who looked at this and took all of this information and determined there was no fraud here and that it was based, the miscalculations were based in part on incorrect information provided by Fort Richardson, Alaska. And that it would not further the public purpose of the FCA to allow these relators in this instance to continue this claim. Was the duty issue decided by the duty issue? Your Honor, we briefed it below. He stopped at the first prong of original source because there are at least two, maybe three in this circuit, prongs to the original source test. The first is direct and independent knowledge, and when he decided they didn't have that, he didn't go further and say whether there was a duty or not. I believe I'm out of time unless the court had any additional questions. Thank you. Thank you, Your Honors. Responding to counsel's citation to Biddle, relators were not required to report this fraud, and I'm going to note that in Biddle, Judge Kleinfeld did a dissent regarding how Biddle went above and beyond whatever obligations he may have theoretically or really had when he went and testified for the Senate. And these relators voluntarily disclosed to their superiors, up the chain of command, Ryan Linehan started AAA and GAO and they met with, if you can see, Ryan Linehan actually met with the Army CID, they met with PARO, they met with other investigatory agencies. They couldn't tell enough people about this fraud. So relators as voluntarily disclosing to the United States, to their superiors and to anyone isn't an issue. It was completely voluntary and at great personal peril. Stanley Smith, for instance, actually had to retire early. He was actually prohibited from going to AAA meetings after a while because all he could talk about was fraud. They said, we don't want you back. So relators are original sources. There's no doubt about it. The trial court, the district court did not address that sufficiently and these relators deserve a chance to try this case on the merits. There is a bit of a brush of the hand here. Is it something we need to go through each of the allegations in the complaint and match them up with the affidavit or declarations or should it be remanded? The court shouldn't have to remand. The declarations set out and there's no need to go back to the complaint. The relators' declarations set out in absolute detail all the information that concerns jurisdiction and so that's all this court needs to do is to review those declarations. How much jurisdiction does the court need? In other words, you have various claims in the complaint about what happened. If it turns out that they are the original and individual is the original source as to one claim, there's jurisdiction but then it wouldn't necessarily be jurisdiction on all the claims or all the issues, correct? This court's in a position right now based on the declarations in the record to determine whether each of those relators are original sources and whether jurisdiction exists. It doesn't need to go back to the trial court. The record's complete. But again, for the same reason I asked some questions about Ms. Bevelle, to determine whether these people are original sources is a fact question. If we review it for clear error, isn't the issue not whether there's a lot of evidence that they were original sources but is there any evidence to sustain the determination that they were not? It's a fact question but it's a legal issue and so this court should look at it de novo. What's the legal issue about whether somebody is original source or not original source? Because jurisdiction is legal. Once you determine that what makes an original source, then you simply have to find out what the timeline is as far as the discovery. Those are all factual questions. Factual questions that the trial court barely even got to. You're criticizing the way the trial court expressed itself. We're concerned here under clear error whether there was evidence to sustain what the trial court did. That's a different question. There is complete clear error in what the trial court did. You're not answering my question. Is there a lack of evidence upon which to sustain the trial court? Is there a total lack of evidence? Is the trial court's determination illogical, implausible? Yes. How so? The trial court was itself conclusory. I'm not asking about its conclusory. I'm asking about what, take any one of your relatives. Is there absolutely no evidence that say Berg, Tim Berg, or Linehan were original sources? We've provided all the evidence that these relators are original sources unrefuted by Honeywell. But the trial court for no reason. Well the trial court did find on page 13 of its order that the AAA report preceded the relators whistleblowing, correct? Which is wrong. What's wrong about it? The AAA report was the result of their whistleblowing, not preceded by their whistleblowing. They reported it first. Your position is that the AAA report had no sources of information other than the relators? The relators initiated it and provided the information to AAA. They were actually the main conduit for the AAA to come up with that report. Otherwise it would be an abuse of discretion. It would be. Regarding Mr. Tim Berg not being a relator, original source, he didn't come on board until after AAA but his documents, his information, and we're assuming of course that AAA was never disclosed. His information was vital to the GAO and Ryan Linehan turned over Tim Berg's information concerning the Anti-Deficiency Act violations to the GAO. These relators worked together, consulted, were on the ground. Stan Smith didn't just interview a few people. He was on the ground looking at pipes, interviewing staff members. He was at AAA meetings and then he was locked out. And he had to retire early because he felt like he couldn't even do this anymore. I have just a couple of minutes. Relators rang the bell again and again voluntarily at great personal peril. The rhetoric isn't going to help us resolve the more difficult questions of matching up the relators' allegations with the complaints. We appreciate the sincereness with which they made their allegations. So that's not an issue. It's more how does it fit legally. So that would help us. As to Ryan Linehan, for instance, he actually sends AAA the contact information for the contracting officer. He actually requested, he actually provided information to the AAA for the audit. He was a point of contact for data. He explained his concerns and shared his numbers with them. He actually communicated weekly updates during this AAA audit to his commander, Colonel Snodgrass, and he provided hard copy documents from the site. He gave the false Department of Energy software model results to the AAA. He gave more electrical purchases invoices to the AAA. He meets with people and tells them about the AAA thing. He goes to the Honeywell briefing concerning AAA and he arranges face-to-face meetings with AAA and Knopf, one of the members of the staff. He attends a meeting in Hawaii regarding PARO. He sends an email to AAA and Imcon. He does all of this stuff. Tom Berg, he actually assisted the AAA to investigate along with Linehan and Stan Smith. He participated in fact finding and he worked in work meetings and assisted Linehan Smith in gathering information for the auditors. Tim Berg saw all sorts of, I'm sorry, Tom Berg saw all of this information concerning Honeywell's fraud, proposed documents misapplying cogeneration factors. He saw proposed documents showing that the infiltration factors had been used and then seeing Honeywell documents showing that software was overwritten. He saw documents showing that it emitted 11 buildings from the post-project condition to show energy savings. He saw all of these documents and he heard Honeywell officials threaten the government with lawsuits if they didn't pay up. That's Tom Berg. Stan Smith on the ground. He's discovering hundreds of motors that Honeywell had installed, increasing the Fort Richardson's electrical consumption. And he actually interviews Fort Richardson plan staff in January 2003. He goes to US AAA meetings and he actually is the one telling them please investigate fraud and he stops being invited to those meetings. One last question. Counsel for Honeywell points out that in her view this isn't the typical public disclosure situation that's dealt with when you look at whether something is available under FOIA. But because it was reported and cited in a government report, that that made it already publicly disclosed, which is different than the FOIA situations. Do you have a response to that? The citation itself doesn't mean that the document is going to be publicly disclosed or the document itself is actually, according to, and I cited it in my briefing, that it just merely means that the semiannual inspector general's report it can't, the semiannual report itself can be disclosed. Not that the underlying report, the AAA report can be disclosed. There's no indication that it even could have been disclosed. All right. Thank you. I think your time is up. Thank you. I'd like to thank both counsel for your argument this morning. The case of Berg versus Honeywell International is submitted.
judges: Hawkins, McKeown, Bea